LEHIGH VALLEY RAILROAD COMPANY OF NEW JERSEY, PLAINTIFF IN ERROR, v. MAYOR AND ALDERMEN OF JERSEY CITY AND STATE BOARD OF ASSESSORS, DEFENDANTS IN ERROR.

Submitted July 11, 1910—Decided November 14, 1910.

1. In a summary proceeding had before the Supreme Court, under the twenty-eighth section of the Railroad Tax act, for the purpose of determining whether a given piece of property belonging to a railroad corporation is assessable and taxable by the state board of assessors or by the taxing authorities of the taxing district in which it is located, the determination of that court upon all questions of fact, when supported by competent testimony, is final.

2. The provisions of the Railroad Tax law require that property of a railroad corporation, which is used for railroad purposes, and also for a purpose which is not railroad in its character, shall be assessed and taxed by the state board of assessors and not

by the taxing authorities of the taxing district in which it is located.

3. Machinery and appliances belonging to a customer of a railroad company and affixed to property of the company with the latter's consent, for use in its place by its owner, is assessable and taxable by the local assessor of the taxing district in which it is situate.

On error to the Supreme Court.

For the plaintiff in error, *Collins & Corbin.*

For Jersey City, *Warren Dixon.*

(No one appearing for state board of assessors.)

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The Lehigh Valley Railroad Company of New Jersey owns and operates a railroad extending across the state from the Delaware river to the Hudson. At its terminal upon the shore of the Hudson it has constructed a series of piers extending into the river, upon which tracks are laid, and from which freight is transhipped from their cars to barges and lighters. In the years 1904 and 1905 both the state board of assessors and the local taxing authorities of Jersey City assessed and taxed one of these piers known as Pier E. Application having been made by the company to the Supreme Court, under the twenty-eighth section of the Railroad Tax act (*Gen. Stat.,* p. 3332), for a summary determination of the character of the property thus doubly assessed, and whether or not it was used for railroad purposes, and by which assessors the same was lawfully assessed, that court, upon the testimony submitted to it, found "that said property was not in fact used exclusively for railroad purposes, but was in part used for other purposes," and ordered and adjudged that the taxes assessed upon it by the state board of assessors be set aside and annulled, and those assessed by the local taxing authorities of Jersey City be affirmed. The railroad company has

sued out the present writ of error for the purpose of reviewing that judgment.

It is entirely settled that, in a proceeding under the twenty-eighth section of the Railroad Tax act the determination of the Supreme Court of a question of fact, sustained by competent testimony, is a finality. *Delaware, Lackawanna and Western Railroad Co.* v. *Newark,* 34 *Vroom* 310. We, therefore, are not concerned with the proofs submitted to the Supreme Court, except for the purpose of ascertaining whether they support the fact determined by it. That they do is made clear from the following accurate summary of the proofs contained in its opinion. "The evidence shows that it (*i. e.,* Pier E) is used as a warehouse pier for the handling of freight which is discharged from cars preparatory to being transhipped by lighters and barges to different points in New York harbor. Flour is about the only commodity put on Pier E, and the flour delivered there is (for the most part) consigned to a single firm of consignees who use the pier for the purpose of blending flour that comes consigned to them. The consignees have no lease of the pier, but are charged for demurrage just the same as other consignees, and they are allowed to have machinery upon the pier without any charge therefor. Some flour for other parties also goes on this pier, but it is a small percentage. The original packages are sometimes emptied on the pier, no doubt for the purpose of blending." The question, therefore, which the case presents for determination is whether a piece of property owned by a railroad company, and used partly for railroad purposes and partly for other purposes is assessable and taxable by the state board of assessors or by the taxing authorities of the taxing district in which it is located.

The present Railroad Tax law was enacted in 1884. By its first section the property of railroad companies is separated into two classes for the purpose of taxation, viz., "all property not used for railroad purposes," and "all other property." The act then provides that the property of any railroad company not used for railroad purposes shall be

assessed and taxed by the same assessors, and in the same manner, and at the same rate, as the property of other owners in the same municipal division or taxing district; and that all other property of any railroad company shall be assessed and taxed as therein directed. The act then constitutes the machinery for assessing and taxing the latter class of property, and creates the state board of assessors as the agency for operating that machinery.

The legislature, by dividing the property of railroad companies into these two classes for the purpose of taxation, did not originate any new scheme. From the very beginning of their existence the property of these companies, used for the accomplishment of the purposes for which they were created, has been set apart as a means of raising state revenue to meet state expenditures. Prior to the year 1873 all railroad companies of this state were incorporated by special charter. Without exception every such charter provided that the company incorporated by it should pay into the state treasury an annual tax of one-half of one per cent. upon its capital stock, or upon the cost of its railroad and appendages, or a fixed sum in commutation thereof, and that no other tax should be imposed upon it. This exemption from other taxation, however, was held not to apply to all the property of these incorporated companies, but only to such as was suitable and proper for their operations, and the accomplishment of the purposes of their charters. *State* v. *Hancock,* 6 *Vroom* 536. Property owned by such companies, but not suitable and proper for carrying into execution the powers granted to them, was taxable at the same rates and by the same machinery as the general mass of property in the state. In the year last mentioned the legislature of the state, perceiving that, under the method of taxation created by these special charters, the property of railroad corporations did not contribute to the funds needed for governmental purposes to the same extent as that owned by individuals, passed a law providing for a more equitable and uniform method of taxing it. *Pamph. L.* 1873, *p.* 112. By that statute all railroad companies occupying and using railroads in this

state were required to pay a state tax at the rate of one-half of one per cent. upon the cost, equipment and appendages of their railroads respectively. They were also required to pay "upon all the real property by them as aforesaid occupied, used or owned, for the purposes of their road, or otherwise, except their main stem, or roadbed and track, not exceeding one hundred feet in width, a county and municipal tax for the benefit of the counties, townships and cities respectively where the same was situate, after the rate of one per cent., upon a valuation thereof, and of all improvements thereon." The office of commissioner of railroad taxation was created by the act, and the incumbent of that office was required to make a separate valuation once in every three years of all the railroad property of every railroad company in the state, used or owned by, or for the purposes of, such corporation, in any county, city or township of the state, and made subject by the act to county, township or municipal taxation, and to return a statement of such valuations to the state comptroller. The act further provided that such valuations should be final, that the county, township and municipal tax of one per cent. should be calculated thereon, and should be collected by the same machinery used for the collection of ordinary county, township and municipal taxes. In 1876 the legislature altered this scheme of taxation to some extent—principally by requiring that the state tax should be paid upon the true value of the railroad, its equipment and appendages, rather than upon its cost; and by requiring the valuation to be made by a board of railroad commissioners composed of the state comptroller, the state treasurer, and the commissioner of railroad taxation, instead of by the latter officer alone. The scheme thus initiated by the legislature dealt solely with the imposition of taxes upon the property of these corporations used or held for railroad purposes, and left such of their property as was not so used or held—in other words, property not suitable and proper for carrying into execution the powers granted to them—to be assessed and taxed by the same methods as theretofore provided; that is, by the taxing authorities of the various

taxing districts in which such property was located, and at local rates. It was not the purpose of this legislation to relieve any of the property of these corporations which theretofore had been taxed for the benefit of the state alone (as distinguished from its various political subdivisions) from the burden of that tax, and so cut down the revenues of the state, but to increase the burden, as to a certain part of that property, for the benefit of the respective taxing districts in which it was located. Then came the present act (passed in the year 1884) and the same purpose is manifested in it. The provision of the first section thereof, to which reference has been made, shows plainly that the legislature intended that all property of these corporations which had theretofore contributed to the governmental expenses of the state should continue to do so; that none of that property should be relegated to the general mass of taxable property of the state, and required to contribute only to the governmental expenses of the various municipalities in which it should be located. In order that this intention should not fail it provided a perfectly plain test for determining whether a given piece of property should be taxed by the method provided by the act, or by the local authorities in the place where it was situate. That test is *use for railroad purposes.* If such a use is found to exist, then that property is to be valued and assessed for taxes by the state board of assessors, and the amount of the taxes assessed is to be paid into the state treasury. It may be conceded that the legislature, if it had thought proper to do so, might have provided for the taxation of property of these corporations which was subject to a double use, that is, property which was used for railroad purposes, and also for other purposes, either wholly or partially by the taxing board of the municipality in which it was located. This, however, it did not see fit to do by the act of 1884, or by any supplement to that statute which it has subsequently enacted. On the contrary it declared that only property which is not used at all for such purposes shall be taxed by the local authorities, and that "all other property" of these companies shall be taxed by the state

board of assessors. Such a legislative declaration leaves no room for construction. To hold that property used for railroad purposes shall be taxed by the local authorities rather than by the state board of assessors, when it is made to appear that another use is also imposed upon it, is not a construction of the words of the act, but judicial legislation. Perhaps such a method of taxation is more desirable than that provided by existing legislation, but whether that method shall be put in force is a matter to be determined not by the courts, but by the legislative department of the government.

It is not intended to intimate by what has been said that the machinery and other property belonging to the consignees of the railroad company, installed upon this pier, is subject to taxation by the state board of assessors rather than by the local taxing authorities of Jersey City. So far as that property is concerned the situation is the same as that disclosed in the case of *Camden and Atlantic Railroad Co.* v. *Atlantic City,* 29 *Vroom* 316; affirmed in this court, 31 *Id.* 242. In that case the railroad company was chartered to operate a steam railroad between the cities of Camden and Atlantic City. A portion of its tracks was laid upon certain highways of the latter municipality. This part of its tracks was used, to some extent, for the purposes provided by the charter, and was also used for operating a street railway thereon, the company having constructed a power-house and erected poles and other equipment along the tracks for the latter purpose. It was held by this court that the tracks and franchises of the railroad were lawfully assessed by the state board of assessors, and the property which constituted the equipment of the street railway was lawfully assessed by the taxing authorities of Atlantic City as property not used for railroad purposes. The application of the principle underlying the decision of the cited case requires that the property of the consignees located upon Pier E should be taxed by the taxing officer of Jersey City.

The judgment under review will be reversed; the tax assessed upon Pier E by the taxing authorities of Jersey City

will be set aside and annulled, and that imposed upon it by the state board of assessors affirmed.

*For affirmance*—THE CHANCELLOR, BOGERT, J. 2.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, BERGEN, VOORHEES, MINTURN, VREDENBURGH, VROOM, DILL, CONGDON, JJ. 9.